Let's get started with our first case, which is 20-9645 Zapata-Chacon v. Garland. You may proceed. Please proceed. Good morning. May it please the Court. In 1999, Mr. Zapata was a lawful permanent resident, married to his citizen wife and father to his first U.S. citizen child. But he was unlawfully detained, removed, and stripped of that status based on a conviction for simple possession of marijuana that did not make him removable. For two decades, he has consistently looked for a solution. We asked this Court to correct three errors by the agency. First, the agency erred in finding that the conviction for simple marijuana possession made Mr. Zapata removable when it did not. Second, the agency premised its denial of sua sponte authority on multiple legal errors in misconstruing its own precedent. And third, the agency erred when it found that Mr. Zapata had not exercised due diligence or demonstrated extraordinary circumstances for purposes of equitable tolling. Let me ask you this. Mr. Zapata-Chacon has repeatedly re-entered the United States after removal. Would you concede that? He has unlawfully re-entered three times, Your Honor, yes. We can't offer, not only can we not give him any relief, but the BIA can't give him any relief under the statute. Would you agree? I don't agree with that, Your Honor. The Court, I believe, is talking about 1231A5. And this Court's decision, obviously, in Tarango. And Tarango recently came out and was issued by this Court. And Tarango dealt specifically with motions to reopen. And the Tarango decision itself- As such, it says reopen or review. And it's not eligible to apply for any relief under this chapter. You've got all the relief you're asking for is under the same chapter. I mean, I think our hands are tied by Congress. Your Honor, I would encourage the Court to think of this differently. Motions to reopen and motions to reconsider are separate statutory remedies created by Congress. This Court in Tarango- Well, they both require somebody to review, don't they? Your Honor, I believe 1231 talks about reviewing in the context of reopening. It says or review. Right. Distinct. Well, again, Your Honor, I believe that that review in Tarango didn't address motions to reconsider. It didn't mention reconsideration at all. And I don't believe any of the other five circuits have a rule that motions to reconsider are barred by this statute. Well, you can't reconsider unless you first reopen. This matter is closed. Your client was removed. The matter is closed. And in order to get back into the case, you've got to reopen it before you can reconsider it. Your Honor, I believe the Court can order a reconsideration and rescission of the removal order without necessarily having to reopen the matter. These are two different separate statutory vehicles. But they're in the same chapter, right? They are in the same chapter, but no circuit court has ruled that motions to reconsider are barred by the statute. They haven't ruled that they're not barred either. I agree with you there. Also, the immigration judge and the board inherently recognized their authority in this case to reconsider because it actually addressed the motion to reconsider on its merits. The government, on top of that, the government raised this issue two and a half years after the filing of the motion to reconsider. So at the very least, we believe that if the Court has reservations around whether 1231 could bar jurisdiction, that it should remand to the agency to make that determination. Well, if it bars jurisdiction, it can't be waived. Your Honor, we believe, at least under the Chenery Doctrine, the board and the immigration judge should at least have the first opportunity to hold forth on this. There's no other case in this country that I'm aware of that finds 1231 bars jurisdiction. Well, you just argued to me that it barred jurisdiction. Jurisdiction was your term. I apologize, Your Honor. And you used it in your brief, too. No. You used it in your brief, too. But, I mean, the issue is if we were to send it back to the BIA, they can't give any relief either because under 1231A5, it says you can't give any relief. We don't believe 1231A5 governs both motions to reconsider and motions to reopen. And in reviewing the cases by both this Court and Tarango, in fact, the language that this Court uses in Tarango, I think, is important. And, again, this was raised in the 28-J letter, right? This is probably an issue that merits some significant briefing. But what Tarango said is that based on the statute's text, there's no authority to reopen. It doesn't hold anything past that and neither do any of the other circuit courts that address this 1231 issue. Why is it a motion to reconsider within the statute? I mean, to reconsider the previous ruling, the Board's going to have to review what it had previously done. I mean, it just seems like we're talking about synonyms here. And, you know, what makes a motion for reconsideration something that doesn't invoke the authority of the Board to review its previous determination? Well, reconsideration and reopening are distinct in a couple of specific ways. First, a reconsideration does not reopen the record. We're asking for a reconsideration of rulings of law. There's no new evidence. There's no new relief. There's no assertion that the proceedings should be reopened. We're saying that in this case, particularly for Mr. Zapata, the issue was whether he was removable. And he was not because his simple marijuana possession conviction isn't a controlled substance offense. And that error of law is absolutely outcome determinative in this case, which is unique. Before we leave the statute and following up on the Chief's question, the statute said it is not subject to being reopened or reviewed. Isn't reconsideration a subcategory of review? I don't believe so, Your Honor, because I believe that the common understanding of review is to review the decision of whatever the immigration judge or the Board of Immigration Appeals decided as it related to reopening. We're asking the court reconsider a closed record, an issue of law where the immigration judge in 1999 made a legal mistake in failing to apply the categorical approach. The most important issue in this case is that Mr. Zapata's conviction for simple possession of marijuana was not removable. The Colorado definition of marijuana is overbroad to the federal definition because it includes all parts of the cannabis sativa plan. In Colorado, that plain language could not be clearer. Prior to 1983, Colorado matched the federal definition. In 1979, the Colorado Court of Appeals issued a decision providing an affirmative defense, a defense to marijuana prosecutions, if the prosecution couldn't demonstrate that the marijuana wasn't in their stocks. Four years later, the Colorado legislature explicitly added the language, all parts of the marijuana plan, excuse me, all parts of the cannabis sativa plan to that statutory definition of marijuana. And here under this court's precedent and titles, and again in Cantu, as Cantu explains, a person need not come forward with an instance of an actual prosecution where the plain language prescribes the conduct at issue. Isn't this argument time-barred? I don't believe so, Your Honor. This is a... How much time did he have to bring this argument? Your Honor, as it relates to the legal error here, our briefing and our argument is that there has been a misapplication of the categorical approach consistently by the agency. But he had 30 days, didn't he, 30 days after removal to bring this argument? That is correct, Your Honor, but those time frames can be equitably told. And so we're how many years out from... We are 22 years past that time frame. So for equitable tolling, the burden on your client would be to show that for that entire 20 years, he was diligently pursuing this argument. Your Honor, we believe that he does not need to demonstrate that he was diligently pursuing this argument. We do believe that he needs to demonstrate that he was exercising reasonable diligence. And I believe in this case... For the entire period that he wants to toll, right? Correct, Your Honor. So if he did it in fits and starts, it's not enough. Correct, Your Honor. I think perhaps relevant to Your Honor is the distinction between this case and the case of Olivas. In this case, we have 30 pages of evidence submitted in our motion to reconsider that contained detailed sworn affidavits by our client. And if I look at that, I see nothing to indicate he was trying to diligently seek vindication of his rights in 1999, 2000, 2002, 2003, or for the better part of 2004. Isn't that... I mean, yes, you've got a pile of stuff saying there's what he did, but you've got big gaps. Isn't that enough to defeat the equitable tolling argument? No, Your Honor. I believe the evidence in the record here indicates that Mr. Zapata relied on the advice of his criminal lawyer in 99 when he pleaded. He relied on misadvice by his INS officers in 99 when they told him there was nothing he could do. He relied on the immigration court's error of law. And in 2000, when he returned to the US, he went back to see his previous criminal defense attorney to ask him whether or not there was anything he could do, and he was told there was not. Then between 2002 and 2005, he consulted with an attorney named Manny Solis down in El Paso, Texas, to find out whether or not he would be able to pursue any rights, and he was told that he could not. So he has at least four separate instances during that period of time where he acted diligently. And after that, he spent 20 years contacting 15 separate attorneys, four of whom you can document in this record, consulting with them, hiring them, and either being ripped off or being told that there was literally nothing he could do. This case is important because there is no precedent finding yet, finding that Colorado marijuana is overbought and indivisible. That's distinct here. The mistake of law or the misapplication leads up to today, leads up to the government's argument that marijuana isn't overbought and indivisible. There is a bit of a circuit split on that, on that issue, and could you address the Ninth Circuit makes a distinction in this overbreath argument between the exceptions to the rule versus elements. And that's how we kind of got around the categorical bar. Thank you, Your Honor. I think in this particular case, there are two circuit courts, the Eighth Circuit and the Eleventh Circuit, that have directly ruled on the marijuana overbreath issue with a language that Colorado has. And most recently, it was Said in the Eleventh that decided that because of the plain language in the statute, no legal imagination was required, which agreed with the Eighth Circuit that because the plain language includes all parts of the sativa plant, no legal imagination is required. And this comports with Cantu and with Tittles in this circuit. In this particular case, even under Sanchez 3, which is the board's own precedent, the only thing it says is that where the legislature goes back and adds in clear statutory language, like they did in Colorado, the realistic probability test is met. May I reserve the remaining time for rebuttal? You may. Thank you. Thank you. All right. Let's hear from Mr. Hayes on behalf of the government. Good morning, Your Honor. Your Honor, may it please the Court, Timothy Hayes on behalf of the Attorney General. The agency lacked the authority to reconsider Mr. Zapata's original removal order once he illegally re-entered the United States and his order was reinstated. This is a new argument for you. It absolutely is, Your Honor. So how do we get there? Have you waived it, forfeited it? It goes to the agency's authority, its jurisdiction, Your Honor, so it cannot be waived. So your position that this is a jurisdiction-stripping statute? For the board's authority, yes, Your Honor. Not jurisdiction-stripping in terms of this Court's right. This Court. Yes. Okay. So if it's not jurisdiction-stripping for this Court, then you could waive it before us. I don't, well, I don't believe so, Your Honor, because under the Court's case law, and there were many cases that were reviewed, under this Court's case law, it said that the agency lacks the authority. If the agency doesn't have the authority, it would be hard-pressed to allow the agency to act contrary to its authority. So I don't think it's really a waivable argument. Is that a futility argument you're making? Yes, Your Honor. Yes, Your Honor. And that also pulls it out of the Chenery Doctrine, too. Chenery is concerned with agency discretion. Agency discretion in one of two ways. Either discretion when you're interpreting ambiguous statutory terms, or discretion when it comes to agency fact-finding. Neither is implicated here with 1231A5, so it would not be a problem with Chenery either. Moving on to the actual, if the Court were to pursue it further, to establish equitable tolling, Mr. Zapata must show that he was pursuing his rights diligently, and that some extraordinary circumstance stood in his way and prevented timely filing. His statute of conviction has never been found in any court that I am aware of to be overbroad. He also never directly appealed the immigration judge's removal order to the Board, so it never reached the Board even on direct appeal. The immigration judge, at least according to the unofficial transcript we have in the and it said that he was properly informed that he waived them. So his only remedy at that point would be within the 30-day time period of a motion to reconsider, to seek reconsideration, and that he did not do. To the extent that equitable tolling is available, you have to show due diligence throughout the time period. The entire time period sought to be tolled, and he wasn't diligent throughout that entire time period. There are gaps in the evidence. I understand that he approached several attorneys and was told by several attorneys that there was nothing they can do, that he was removable for this offense, but that alone does not show due diligence. Well, I mean, if you're told by an attorney that you trust, that you don't have any possibility of prevailing, isn't that reasonable not to keep pursuing it? Well, you would still have to pursue your appellate rights generally. Even if you're told by someone that they don't believe there's been any legal, there's no legal recourse, you still need to pursue it. Normally what happens in these cases is there is some case, and in this instance they're arguing out of titles, but there's some circuit court case that someone believes has sort of affected the original law or modified it, and typically they look to see that someone does something diligently past that date. And it's usually within a very short time frame. And we still have gaps in this case beyond that. As far as the Colorado statute, there is a distinction between the two. The federal definition exempts stalks of a marijuana plant, whereas the Colorado statute does not. But that alone goes to the silence of a parallel limiting exemption, not necessarily a statutory distinction. So in those cases, some circuit courts, such as the Ninth Circuit, require under Duenas-Alvarez a showing of either the facts of your own case match that exception, or an exemplar prosecution. And we don't have that in this case. We don't have an example of any court finding the statute to be overbroad, at least at this time. Haven't our cases, though, been pretty narrow on that point? We have a number of cases that don't insist on an actual prosecution, assuming the statute is otherwise plainly overbroad. Right. I would agree. It would depend on the statutory language and whether the court finds it overbroad in its face. And that's where there's some wiggle room. I mean, even in the Eleventh Circuit, they do have the Syed case, which is relevant to a marijuana one, but we see a lot of litigation with antique firearms. So the federal government has an antique firearms exception for a lot of firearm offenses, but many states do not. And we see that argument raised a lot in that context. In the Eleventh Circuit itself, which has an on-the-face, like, you do not need to show Duenas-Alvarez if it's overbroad on its face. They have said in some cases, like Aguilar, that even without an antique firearms exception in certain states, we still want to see a prosecution because it's so far-fetched that someone would actually be prosecuted. Even though the statutory language doesn't perfectly align. So it's really dependent on whether the court finds the statute overbroad in its face or not. But this Court has not yet addressed the argument that the Ninth Circuit affirmed or was persuaded by. Right. I think that's right. I don't think this Court has touched on the actual distinction if there's Between elements and exceptions. Exactly. Yes. I don't think this Court has reached that issue. But I don't think it would be appropriate in this case for a number of reasons. 1231A5 being one, the equitable tolling and due diligence being another. So I don't think this would be the proper case to reach that. A case down the line, perhaps. Especially, I'm sure that people are charged with this offense as Mr. Zapata was originally. It will percolate back up. Can we look at the tolling decision de novo or are you arguing a different standard of review? That's a good question, Your Honor. I think equitable tolling is more legal than factual. But there are factual elements to it. Especially with respect to the diligence question. So I would view it more as a mixed question of factor of law. Now whether the Court can reach it is going to depend on how wide 1252A2D is read. 1252A2D allows the Court to reach legal questions. And so if the mixed question is predominantly legal, then it would be okay for the Court to reach it if it moved past 1231A5. But if it's predominantly factual, it would be barred. Why isn't a motion to reconsider that we have here just a different animal than the A5 motion to reopen? Or whatever reviewed means. It's a little ambiguous here. But why isn't that just a different type of proceeding that may not be subject to the Tarongo decision? Well, I do think it's subject because of the oral review part. But I think the reason why you don't see it come up here in this kind of factual scenario very often is most of the time when people are purported, they have their conviction vacated. And usually it's vacated, well not usually, but sometimes it's vacated for substantive reasons. There's a constitutional infirmity or some reason for that. So then you have a change in the factual record. Because they were originally convicted when they were removed, but they no longer are. So they're moving to reopen because they have new evidence to present. What Mr. Zapata is presenting or trying to present is a legal question that perhaps in 1999 every jurist believed that the Colorado statute matched the federal definition. But evolving case laws kind of changed that. So we need to go back to the 1999 record, the original record, and reconsider it. So I think that that's why they moved to reconsider rather than reopen. Because there isn't a change in the actual record. But it's a distinction without a difference under 1231A5. Yeah, don't all these lead to the same path and that is a new outcome? I mean, that's what they're looking for. Right. I also think the distinction is there in part because Congress kind of drew it. And they didn't necessarily draw it in 1996 with the passage of IRERA. There was a 1990 act that told the Attorney General back then there were no time limits to filing motions to reopen. You can file at any time the motions to reconsider. And Congress told the Attorney General through rulemaking to put in time limits because they thought non-citizens were abusing that. So then that's where the time limits start to come in. And then they thought 30 days would be enough for a legal question and 90 days would be enough for a motion to reopen. And then Congress codified that in 96. So I think the distinction sort of evolved. But I don't think it was strictly construed until recent times because of the way now the statute reads and it has that distinction in there. When did the board, you know, in this decade saga, when did the board finally realize it needed to be applying the categorical approach in these drug convictions? That's another interesting question. I can't definitively pin it down. But I would say the mid to late 90s is when you started to see more application of this approach to especially when you were dealing with the CIMT ground too. The case law has not always been clean on it. I can definitely say in the last 10 years it's been applying this approach pretty consistently. Taylor was decided what in the early 90s and, you know, in theory was the tell for the immigration board to start looking at that issue. Right, Your Honor. But even then the board was flip-flopping back and forth, especially with the basic controlled substance. Involving a controlled substance, the use of the word involving a lot of times we're saying didn't require the use of the categorical approach. But I think in recent Supreme Court precedent that sort of now we sort of look at involving and, yeah, it can still involve the categorical approach. It's still an element comparison. But I don't think that was court cut until very, very recently, maybe the last 10 years or so. And unless Your Honors have any further questions, we ask that you please affirm the decision of the board. Thank you. We have some rebuttal time for Mr. Meyer. Thank you, Your Honors. As it relates to due diligence, legal consultations on a consistent basis is enough. In matter of Gamarani, the Ninth Circuit ruled that consulting with multiple attorneys is a paradigmatic example of a due diligence analysis. When did you learn of the issue? When did you retain counsel? When did you file? The Tenth Circuit in Riley has also criticized the BIA for evaluating diligence solely based on the delay in filing. Here we think there's an exemplary diligence. I'm not aware of any client I've ever had that's consulted with 16 different lawyers around the same legal issue and consistently received incorrect advice. Moreover, in response to the government's argument that normally the new case establishes a timeframe for diligence, this is the case. The Tenth Circuit hasn't ruled yet on this issue. The Board of Immigration Appeals case law is a mess. And the government is arguing in this case that this precedent of Tittles and Cantu doesn't apply to this statute. So the diligence here is exemplary because he's taking action in his own case, not waiting until the circuit holds on that marijuana issue and then filing within 30 days after that. Are we applying an abusive discretion standard to the equitable tolling determination by the Board? I don't believe so, Your Honor, because we have a stipulated set of facts here. The government did not oppose or contradict, and neither the Board or the Immigration Court found that the sort of nucleus of facts here weren't clearly established. And so we're applying basically the law to the facts. All right. Thank you. I think time's expired. Counselor, excuse me. Appreciate the fine arguments. The case shall be submitted.